**WHITECLIFF, INC., d/b/a White Cliff Manor**

v.

**The UNITED STATES.**

No. 407–74.

United States Court of Claims.

May 12, 1976.

---

348

Phillip J. Campanella, Cleveland, Ohio, for plaintiff; Everett D. McCurdy, Cleveland, Ohio, attorney of record; Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, of counsel.

Julie P. Dubick, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, and DAVIS and KASHIWA, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

This controversy between a provider of services under the Medicare program and the Government presents primarily a dispute over 42 U.S.C. § 1395x(v)(1) (1970),[1] relating to the reimbursement to be made to a Medicare provider. Both parties have moved for summary judgment but we find that we cannot dispose of the case finally.

By contract accepted by the Government in 1966, plaintiff Whitecliff, Inc., operating an extended care facility, became a Medicare provider and thus entitled to reimbursement by the Government for reasonable costs incurred in giving services to Medicare beneficiaries. Whitecliff designated the Blue Cross Association (BCA) and Blue Cross of Northern Ohio (BCNO) as its fiscal intermediaries.[2]

In 1970 Whitecliff instituted a work measurement program which purportedly revealed that its actual Medicare costs for 1967–1970 exceeded the reimbursement received from the Government. Whitecliff submitted a request for a retroactive adjustment under 42 U.S.C. § 1395x(v)(1) to correct the alleged inadequate reimbursement. BCNO and BCA each denied the request, and Whitecliff appealed to the BCA Medicare Provider Appeals Committee, in accordance with a disputes procedure established by the BCA in 1968. After a hearing, the Appeals Committee upheld BCA's denial of the claim. Whitecliff then filed suit in this court for $213,755, the amount of the alleged underpayment, asserting that it is entitled to a retroactive adjustment and that it was denied due

process because the BCA Medicare Provider Appeals Committee was not an impartial decision-maker. The Government defends on the grounds, first, that the social security statute precludes any judicial review of the intermediaries' reimbursement determinations, and, second, that plaintiff's arguments have no merit.

A number of courts have considered the permissibility and scope of judicial review of Medicare provider reimbursement disputes. No consensus has emerged on whether courts may review the merits of reasonable cost determinations (*see, e. g., Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co.*, 311 F.Supp. 405, 408–09 (E.D.Wis.1970) (court may not review amount determined to be reasonable cost); *Temple Univ. v. Associated Hosp. Serv.*, 361 F.Supp. 263, 267–70 (E.D.Pa.1973) (court had jurisdiction to review merits of determination that a certain transfer of funds was restricted and therefore deductible from Medicare reimbursement); *Coral Gables Convalescent Home, Inc. v. Richardson*, 340 F.Supp. 646, 650 (S.D.Fla.1972) (court could not make de novo reasonable cost determination, but court suggested that it might review for substantial evidence after an administrative hearing was held)), but the courts have uniformly sustained judicial review at least for compliance with the Constitution and the governing statute. *See, e. g., Aquavella v. Richardson*, 437 F.2d 397, 400–02 (2d Cir. 1971); *Kingsbrook Jewish Medical Center v. Richardson*, 486 F.2d 663, 666–68 (2d Cir. 1973); *Rothman v. Hospital Serv.*, 510 F.2d 956, 958–60 (9th Cir. 1975); *Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co., supra* at 409; *Americana Nursing Centers, Inc. v. Weinberger*, 387 F.Supp. 1116, 1118–19 (S.D.Ill. 1975); *South Boston Gen. Hosp. v. Weinberger*, 397 F.Supp. 360 (W.D.Va.1975). We accepted this scope of review in our order in

---

1. Statute citations are to the 1970 *Code* unless otherwise noted, because later amendments are inapplicable to this case. All section citations, standing alone, are to title 42 of the *Code.*

2. A fiscal intermediary is a public agency or private organization which contracts with the

Secretary of Health, Education, and Welfare, under 42 U.S.C. § 1395h(a), to determine the amount of reimbursement to be paid to providers and to make the payments. The contract may require the intermediary to perform additional services. *See* 42 U.S.C. §§ 1395h(a), (c).

*Goldstein v. United States*, 201 Ct.Cl. 888, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973).

The Government contends, however, that the Supreme Court's recent decision in a social security benefits case, *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), implicitly overruled these prior decisions and endorsed the Government's position that there is no review at all of Medicare provider determinations such as the one now before us. In *Salfi* the Supreme Court ruled that 42 U.S.C. § 405(h)[3] precludes district court review of social security benefit decisions, except insofar as review is authorized elsewhere in the Social Security Act. *Id.* at 756–63, 95 S.Ct. 2457. Because Section 1395ii of 42 *United States Code* makes Section 405(h) applicable to the Medicare program, the Government argues that Section 405(h), as interpreted in *Salfi*, prohibits judicial review of all Medicare determinations other than those few for which the act expressly provides review. For the years in question, the act explicitly treats judicial scrutiny of specified Medicare determinations only in 42 U.S.C. § 1395ff, which does not authorize review

of the type of decision appealed by plaintiff.[4]

■ We decline the invitation to extend *Salfi's* reading of Section 405(h) to this Medicare case. The social security provisions with which the Supreme Court dealt in *Salfi* authorize appeals of all decisions made after hearings, without limitation as to issues;[5] the practical effect of the *Salfi* decision was simply the enforcement of the Section 405(g) procedures and prerequisites to judicial review. *See also Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, decided Feb. 24, 1976. By contrast, the Medicare statute's express review provisions in effect prior to 1973 apply to extremely limited categories of cases involving providers.[6] To import into the Medicare program the *Salfi* preclusion of judicial review (except as expressly authorized) would be to prevent all review of very large categories of cases and issues, including constitutional questions, and to accord absolute finality to adjudications by private organizations like the BCA. Such a result would be of doubtful constitutional validity and would undermine the normal presumption in favor of judicial review.[7]

3. Section 405(h) states:
   "The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employe thereof shall be brought under section 41 of Title 28 [now the sections of Title 28 delimiting district court jurisdiction] to recover on any claim arising under this subchapter."

4. 42 U.S.C. § 1395ff(c) entitles an institution to a hearing by the Secretary and to judicial review under Section 405(g) only after a decision to terminate the institution as a provider of services or a determination that the institution is not a provider of services. Other parts of 1395ff cover the rights of individual Medicare beneficiaries to hearings and appeals.
   In 1972 and 1974, Congress enacted provisions and amendments greatly expanding statutory review of Medicare provider reimbursement determinations. An amendment of 1972 established a Provider Reimbursement Review Board with jurisdiction to review reimbursement disputes where the amount in controversy exceeds $10,000. Social Security Amend-

ments of 1972, § 243, 86 Stat. 1420, 42 U.S.C. § 1395oo. In 1974 Congress enlarged the review provision of 1395oo to grant providers the right to obtain judicial review, in a district court, of any decision of the statutory Board and of any reversal, affirmance, or modification of the Board's decision by the Secretary. Pub.L. No. 93–484, § 3(a), 88 Stat. 1459 (1974), 42 U.S.C. § 1395oo (f)(1). These provisions apply only to cost reporting periods ending on or after June 30, 1973.

5. Section 405(g) entitles any individual who was a party to a hearing to appeal any final decision made after a hearing. Because Section 405(b) entitles any individual prejudiced by an initial decision on an application for benefits to a hearing, the review secured by Section 405(g) potentially covers every benefits decision.

6. *See note 4 supra.*

7. *See generally Johnson v. Robison*, 415 U.S. 361, 366–68, 373–74, 94 S.Ct. 1160, 39 L.Ed.2d 339 (1974); *Barlow v. Collins*, 397 U.S. 159, 166–67, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Kingsbrook Jewish Medical Center v. Richardson*, 486 F.2d 663, 667–68 (2d Cir. 1973); Ho-

We cannot assume that the Supreme Court would extend the *Salfi* interpretation of Section 405(h) to Medicare cases, where the consequences would be so dramatically different, and therefore we adhere to the pre-*Salfi* view of judicial review of Medicare provider disputes: Where the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations; in other cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions.[8] In this court, 28 U.S.C. § 1491 (the Tucker Act) is the pertinent jurisdictional provision both because of plaintiff's contract with the Government and also because the Medicare legislation, fairly read, mandates appropriate payment to providers. *Cf. United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114, decided March 2, 1976.

■ The standard of review set forth in *Goldstein, supra,* encompasses plaintiff's claim for money judgment, based as it is on the allegation that the BCA Medicare Provider Appeals Committee's decision violated the Medicare statute. Relying on 42 U.S.C. § 1395x(v)(1)(B) (1970), which states that the regulations "shall * * * provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive," plaintiff challenges the

Committee's rejection of its attempt to use its work measurement study to prove that its Medicare reimbursements for 1967–1970 were inadequate. The Government's position is that it is immaterial that Whitecliff's work measurement study may show that its Medicare reimbursements for 1967–1970 were inadequate. The first leg of the argument is that, under Section 1395x(v)(1), the Secretary of Health, Education and Welfare is authorized to promulgate regulations setting forth the allowable methods for determining costs. The second leg is that the Secretary approved only two pertinent methods—the "departmental" and the "combination," 20 C.F.R. §§ 405.452(*a*), (*b*)[9]—but did authorize use of a "more sophisticated method" if the provider obtained prospective approval. 20 C.F.R. § 405.453(d)(2)(ii). The third leg is that plaintiff admittedly used the "combination" method and did not seek or obtain advance approval for any other method.[10] It follows, according to the Government, that plaintiff is precluded from any further reimbursement even though it can show that, for its circumstances, the "combination" method led to inadequate reimbursement; the failure to ask for and obtain advance approval of some better method of determining costs is enough to bar the provider.

■ The answer, we think is that the statute's retroactivity provision—quoted above—does not permit the Secretary to disregard the significant fact that his two approved methods of cost-determination

---

mer & Platten, *Medicare Provider Reimbursement Disputes: An Analysis of the Administrative Hearing Procedures,* 63 Geo.L.J. 107, 126–29 (1974). In *Salfi* the Supreme Court distinguished *Johnson v. Robison, supra,* a case in which the Court held that a statute similar to 42 U.S.C. § 405(h) did not preclude review of the question raised, in part on the ground that review of a constitutional challenge to the statute would have been cut off if the interpretation contended for by the Government in *Johnson* had prevailed, while no constitutional challenges would be denied review under the Social Security Act. *See* 422 U.S. at 762, 95 S.Ct. 2457.

**8.** For disputes over reimbursements with respect to fiscal periods ending on or after June

30, 1973, Congress has largely resolved the problem of judicial review; only disputes where the amounts in controversy are less than $10,000 are left untreated by statute. *See* note 4 *supra.*

**9.** These are methods for allocating or apportioning costs between Medicare patients and the provider's non-Medicare patients. Plaintiff's complaint is that the "combination" method it followed led in its case to inadequate allocation of costs to its Medicare patients. It is this difference for which Whitecliff is suing.

**10.** *See* note 9 *supra.* Plaintiff's work measurement study *did not utilize* the "combination" or "departmental" methods.

can lead to inadequate reimbursement in certain circumstances and in particular cases. That was the ruling in *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663 (2d Cir. 1973), in which the provider maintained, and the Government conceded, that the particular method there involved could result in inaccurate reimbursement in certain situations (including that plaintiff's). The Second Circuit held that the corrective adjustment mandated by 1395x(v)(1) applies wherever a cost method produces an inaccurate reimbursement and was "designed to rectify mistakes made by HEW in formulating a particular method of determining cost." 486 F.2d at 669, 670. Obviously a regulation permitting a provider to seek a modified cost-method *for the future* is no substitute for the statutory requirement of "suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." [11] The Secretary cannot excuse his agency or his agents (here, the BCA) from the statutory duty to make such retroactive adjustments by failing to promulgate the prescribed regulation or by using in its place regulations permitting only a prospective change of method and a retroactive adjustment to bring interim payments into agreement with the annual reimbursement produced by a method of determining costs. *See Kingsbrook Jewish Medical Center v. Richardson, supra,* 486 F.2d at 669-70.

■ The BCA Medicare Provider Appeals Committee therefore violated the Medicare statute when it insisted upon treating plaintiff's work measurement study as an unrecognized method of cost apportionment and found no support in the law or regulations for the requested retroactive adjustment, regardless of the accuracy of the work measurement study. The Committee should instead have determined whether Whitecliff had proved that its actual 1967–1970 Medicare costs (limited by reasonableness) exceeded the reimbursements it received under the "combination" method of determining costs and have granted a retroactive adjustment if Whitecliff had proved its claim that that method was inadequate for Whitecliff's situation. Because the Committee made no findings on Whitecliff's actual costs for 1967–1970, no comparison of those costs with its reimbursements for those years, and no evaluation of the accuracy of the method under which the provider was paid, we must remand to the Secretary for a hearing at which Whitecliff will be given an opportunity to prove its actual costs and the inadequacy of its reimbursement.[12]

We need not and do not decide plaintiff's remaining contention that the composition of the BCA Appeals Committee violated due process in that three of the five members were BCA employees. However, we note that one district court has found this issue to be substantial and another has ruled that the BCA Committee's composition does deprive a provider of the impartial decision-maker required by cases such as *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See Temple Univ. v. Associated Hosp. Serv.,* 361

**11.** The Government contends that Section 1395x(v)(1) calls only for an annual adjustment, at year-end, when the total of the interim (monthly or more frequent) payments made under Section 1395g exceeds or falls below the reimbursement calculated on the basis of the cost report filed at year-end. The wording of the statute leaves no room for such an interpretation. It requires adjustment when the "reimbursement produced by the methods of determining costs" proves either inadequate or excessive. Under the regulations, the only reimbursement produced by the cost-determining methods is the reimbursement determined at the end of a fiscal period, after a provider has submitted its cost reports to which these methods are applied. The interim payments are merely monthly (or more frequent) estimates of costs, to which Section 1395x(v)(1) makes no reference. *See* 20 C.F.R. §§ 405.451–.454; *Kingsbrook Jewish Medical Center v. Richardson, supra,* 486 F.2d at 669.

**12.** 42 U.S.C. § 405(h) seems to us to indicate that federal courts do not have jurisdiction to try and determine in the first instance a provider's reasonable costs. *See* note 3 *supra.*

F.Supp. 263, 267 (E.D.Pa.1973); *St. Louis Univ. v. Blue Cross Hosp. Serv., Inc.*, 393 F.Supp. 367, 371 (E.D.Mo.1975); *Faith Hosp. Serv. v. Blue Cross Hosp. Serv., Inc.*, 393 F.Supp. 601, 602 (E.D.Mo.1975).[13] *See also* Homer & Platten, *supra* note 7, at 131–33. *But see Community Hosp. of Indianapolis, Inc. v. Blue Cross Ass'n*, No. IP 73–C–615 (S.D.Ind. Dec. 18, 1974) (composition of Committee does not violate due process). The Secretary could obviate any due process challenge to the decision on remand by providing plaintiff with a hearing before a body not composed in its majority of BCA employees.

In conclusion we hold that the plaintiff is entitled to a retroactive adjustment [14] in its reimbursement if it can prove that its actual reasonable costs for 1967–1970 exceeded its reimbursement on the "combination" method, but otherwise deny plaintiff's motion for summary judgment, deny the Government's cross-motion, and remand the case to the Secretary of Health, Education, and Welfare pursuant to Rule 149 and our remand statute, Pub.L. No. 92–415, 86 Stat. 652 (1972), 28 U.S.C. § 1491 (Supp. IV, 1974), for a hearing on plaintiff's reasonable costs and the adequacy of its reimbursements for the years 1967–1970, and for a retroactive corrective adjustment [15] if plaintiff proves that its reimbursements were inadequate. Further proceedings in this court are stayed for a period of six (6) months from the date of this decision. Plaintiff's counsel is designated to advise the court by letter, at intervals of 90 days, of the status of the remand proceedings. The parties and the Secretary should also take note of Rule 150.

---

13. In decisions issued after this opinion was prepared and adopted, the Eighth Circuit modified the Eastern District of Missouri's decisions in *St. Louis University* and *Faith Hospital*. The circuit court found, contrary to the district court, that the composition of the Committee is constitutionally permissible but agreed that due process precludes vesting the final determination of the issues in the Committee as constituted. Therefore, the court merely modified the district court's judgment, retaining the requirement that the Secretary make the final determinations. *St. Louis Univ. v. Blue Cross Hosp. Serv.*, 537 F.2d 283 (8th Cir. 1976); *Faith Hosp. Ass'n v. Blue Cross Hosp. Serv.*, 537 F.2d 294 (8th Cir. 1976).

14. Subject to any valid regulation, applicable to this case, which may limit the amount of retroactivity of corrective adjustments under § 1395x(v)(1). *See Kingsbrook Jewish Medical Center v. Richardson, supra*, 486 F.2d at 670.

