On April 20, 1979 the court entered the following order:
Before Friedman, Chief Judge, Davis and Kashiwa, Judges.
This case comes before the court on defendant’s motion for summary judgment, filed August 31, 1978. In the absence of any indication of opposition from plaintiffs, the court initially issued a "speaking” order on November 17, 1978 (without oral argument) granting defendant's motion. Thereafter, on plaintiffs’ counsel’s assertion that his office had never received defendant’s motion, the court vacated (on January 26, 1979) its earlier order. Plaintiffs then filed an opposition to defendant’s motion, and the case is now ready for disposition (again without oral argument).
Plaintiffs, New Jersey corporations which are providers of services under the Medicare provisions of the Social Security Act,[1] challenge as unconstitutional and without statutory authority the Medicare regulation providing for the recapture of excess accelerated depreciation reimbursements in cases where the provider has terminated or substantially decreased its participation in the Medicare Program.[2] Plaintiffs also challenge certain disallowances of owner’s compensation and physical therapy costs.
Since January 1, 1967, plaintiff Lincoln Park Convalescent Home, Inc. has provided nursing services to the public on property owned by plaintiff Lincoln Park Nursing Home. Since the same date, plaintiff Andover Nursing and Convalescent Home, Inc. similarly has provided nursing services to the public on property owned by plaintiff Andover Nursing Home. Each pair of corporations (hereinafter referred to as "Lincoln Park” and "Andover” respectively) forms a single "provider” of services under the Medicare Program, 42 U.S.C. § 1395x(u), entitling each *628 to reimbursement from the Government for reasonable costs incurred in extending nursing services to Medicare beneficiaries. 42 U.S.C. § 1395f(b). Plaintiffs nominated Blue Cross Association (BCA) and its local administering agent Hospital Service Plan of New Jersey (Plan) to act as their fiscal intermediaries[3]
In 1973, the Plan determined that plaintiffs had been overpaid for fiscal years 1967 through 1971 and proceeded to deduct appropriate amounts from their current reimbursements. Plaintiffs challenged three of the adjustments made by the Plan, specifically (1) its adjustment to recapture the difference between straight-line depreciation and the accelerated depreciation Lincoln Park had claimed as a reimbursable cost, (2) the Plan’s refusal to allow certain sums to be paid as compensation to the owners of Lincoln Park and Andover, and (3) the Plan’s disallowance of costs for physical therapy services claimed by Lincoln Park. Plaintiffs appealed these determinations to the Blue Cross Association Provider’s Appeals Committee (Committee), a review board established by the BCA to hear and decide appeals from providers who, like plaintiffs, are not content with a decision of their fiscal intermediary. Two separate hearings were held, one on May 2, 1973, which was limited to the disallowance of costs for owner’s compensation for the years 1967 and 1968, and the other on May 15, 1974 which encompassed all of plaintiffs remaining disputes. In each case, the Committee affirmed the Plan’s determinations as to properly reimbursable costs. Plaintiffs have thus exhausted their administrative remedies.[4]
Plaintiffs’ first claim before this court involves a challenge to the constitutional validity and statutory authority of the Medicare regulation requiring recapture of excess accelerated depreciation when the provider has *629 terminated or substantially decreased its participation in the Medicare program. From 1966 until August 1, 1970, a Medicare regulation gave providers the opportunity to claim accelerated depreciation on capital assets as a reimbursable cost. 20 C.F.R. § 405.415 (1967). Until 1970, plaintiffs exercised their option to claim accelerated depreciation.
On August 1, 1970, a proposed Medicare regulation was adopted, effective the same date, which provided, in relevant part, that when a provider terminated its participation in the Medicare program or when there had been a substantial decline in use of the provider’s services by Medicare patients, the Secretary of the Department of Health, Education and Welfare could recover as an offset to current reimbursements due "the excess reimbursable, cost, determined by using accelerated depreciation methods and paid under the program over the reimbursable cost which would have been determined and paid under the program by using the straight-line method of depreciation.”[5] Plaintiffs claim that this regulation, providing for the retroactive recapture of excess accelerated depreciation, is contrary to the Medicare Act and is unconstitutional in that it contravenes the due process clause of the Fifth Amendment. Plaintiffs also argue that the regulation was improperly applied to them because the decline in Medicare use of their services occurred through no fault of their own.
This court considered and rejected all of these arguments in Summit Nursing Home, Inc. v. United States, 215 Ct. Cl. 581, 572 F. 2d 737 (1978). In concluding that the retroactive application of the regulation did not transgress constitutional guarantees, we explained:
[T]he Secretary determined, in the regulation, that when a substantial decrease in the utilization of plaintiffs facilities by Medicare patients occurred, a continued allowance of accelerated depreciation at the rate previously approved would result in a situation where the non-Medicare patients would get the benefit of expenditures made solely for the benefit of Medicare patients. In view of the explicit statutory obligation *630 imposed on the Secretary [to ensure that the Medicare program not pay costs of non-Medicare patients, 42 U.S.C. § 1395x(v)(l)(A)(i)], we cannot say that the retroactive recapture here was such an unreasonable or oppressive application of the regulation that it constituted a denial of due process.
Id. at 594, 572 F. 2d at 744.
Plaintiffs ask us to depart from the ruling in Summit Nursing Home, Inc., and to adopt instead the reasoning of the Third Circuit which recently refused to apply the same regulation retroactively to a case which seems to be on all fours with Summit and the present one. Daughters of Miriam Center for the Aged v. Mathews, 590 F. 2d 1250 (3d Cir. 1978). However, under the settled practice of this court this panel cannot overrule or disregard the decision of another panel even if we have the disposition to do so; only the court en banc can do that. See Dravo Corp. v. United States, 219 Ct.Cl. 416, 419, 594 F. 2d 842, 843 (1979). Accordingly, in view of Summit Nursing Home we must grant the Government’s motion for summary judgment on plaintiffs’ accelerated depreciation claim.
Plaintiffs’ second and third claims require this court to review the administrative determinations of the Plan with respect to disallowances for owner’s compensation and physical therapy services. On appeal, these disallowances were upheld by the Committee.
It is by now settled that this court has a limited scope of review over such claims in Medicare cases. As we said in Gosman v. United States, 215 Ct. Cl. 617, 621, 573 F. 2d 31, 34 (1978):
the decisions of the Hearing Panel are to be examined for compliance with the Constitution, statutory provisions, and regulations having the force and effect of law, as well as for the taint of arbitrariness, capriciousness, or lack of support in substantial evidence.
See also St. Elizabeth Hospital v. United States, 214 Ct. Cl. 322, 326-27, 558 F. 2d 8, 11-12 (1977); Overlook Nursing Home, Inc. v. United States, 214 Ct. Cl. 60, 65, 556 F. 2d 500, 502 (1977); Whitecliff, Inc. v. United States, 210 Ct. Cl. 53, 56-58, 536 F. 2d 347, 349-51 (1976), cert. denied, 430 U.S. 969 (1977). Plaintiffs summarily attack the procedural *631 fairness of the hearings before the Appeals Committee but do not list any information they could not present, or show with any specificity at all that they were in fact deprived of a fair opportunity to present their viewpoint or to answer the Plan’s contentions. In these circumstances, there is no ground on which we can order a further administrative hearing or direct a trial de novo in this court. Cf. Goldstein v. United States, 201 Ct. Cl. 888, cert. denied, 414 U.S. 974 (1973). The administrative record will be accepted as the basis for our review.
Both Lincoln Park and Andover nursing homes were owned and operated by corporations which were solely owned by Mr. and Mrs. Jerry Turco. Mr. Turco was the executive director of the two homes, while his wife held the position of executive administrator. From 1967 to 1971, Mr. and Mrs. Turco claimed certain sums representing compensation for their personal services as reimbursable costs under Medicare regulation 20 C.F.R. § 405.426 (1966).[6] A portion of these sums was disallowed by the Plan and the Committee as unreasonable.
Plaintiffs specifically challenge the Plan’s complete disallowance of owners’ compensation to Jerry Turco and its partial disallowance of compensation to Mrs. Dolores Turco.[7] The Plan’s refusal to permit any compensation to be paid to Mr. Turco was based on findings that he was employed full-time in a construction and paving business unrelated to the nursing homes and that any services he performed for the homes were in the nature of overseeing his investment. We find this determination to be fully supported by the record, particularly in view of evidence in the record that Mr. Turco’s interest in Lincoln Park and Andover was strictly financial and that he did not actively participate in the operation of the nursing homes.
We also find the partial disallowance to Mrs. Turco to be fully supported by the record and to be neither arbitrary nor capricious. The Plan based its decision on guidelines *632 prepared by the Bureau of Health Insurance specifying the range of reasonable compensation for owner-administrators, based upon bed size of the facility. Mrs. Turco was allowed a compensation approximately equal to one-half the top salary in the range for a 150-bed nursing home for each of the two facilities. This decision was entirely reasonable since Lincoln Park and Andover each had 150 beds and Mrs. Turco, employed full-time by the nursing homes, divided her time equally between the two. Given this and the fact that the record shows that the nursing homes had full-time salaried administrators other than Mrs. Turco, we cannot say that the Plan’s decision to disallow a portion of her claimed owner’s compensation was arbitrary or capricious or unsupported by the evidence.
Plaintiffs’ brief in opposition to the defendant’s motion for summary judgment contains several general and nonspecific statements as to the alleged contributions of Mr. and Mrs. Turco to the administration and management of the homes — supported only by short conclusory affidavits by Mr. and Mrs. Turco that the briefs’ statement of facts concerning their compensation is true. We are given no adequate reason why this purportedly factual information was not furnished to the Appeals Committee, but in any event the general statements now made do not deprive the Committee’s determination of the support of substantial evidence or render it arbitrary or capricious.
Plaintiffs’ third claim is a challenge to the Plan’s decision to reimburse Lincoln Park at the rate of $4.00 per treatment, rather than $6.00 per treatment, for physical therapy services rendered by one Steven Frank in 1969 and 1970. The Plan disallowed any reimbursement in excess of $4.00 per treatment based on 1971 guidelines for reasonable costs of physical therapy services established by the Bureau of Health Insurance in conjunction with the American Physical Therapy Association.[8]
Plaintiffs assert that the retroactive application of these 1971 guidelines to a previously negotiated contract for services performed in 1969 and 1970 is a violation of the due process clause of the Fifth Amendment. We do not *633 agree. In promulgating these guidelines, the Bureau of Health Insurance was doing no more than fulfilling its statutory mandate to ensure that services rendered to Medicare beneficiaries do not exceed their reasonable cost. 20 C.F.R. § 405.451 (1966). The Bureau defines reasonable cost in terms of that which the "prudent buyer” would pay. Specifically, "[t]he prudent and cost-conscious buyer not only refuses to pay more than the going price for an item or service, he also seeks to economize by minimizing cost.” Provider Reimbursement Manual, HIM-15, § 2103. Among the methods permitted intermediaries to determine excess costs is "comparing the prices paid for similar items or services by comparable purchasers . . . .” Id. This is precisely what the Bureau did in establishing the reasonable fee schedule for physical therapy services. Since the Plan was under a statutory obligation to deny plaintiffs’ excessive costs, we cannot say that the application of the 1971 fee schedule to plaintiffs’ contract with Mr. Frank was so unreasonable as to violate due process.
Nor was the Plan’s decision arbitrary or^ capricious or unsupported by substantial evidence. In denying the excess reimbursement, the Plan was fulfilling its regulatory duty to exclude excessive costs from reimbursable amounts in cases where a provider can show no clear justification for paying more than the going rate for physical therapy services. Provider Reimbursement Manual, HIM-15, § 2103. The record reveals no offered justification for the premium, other than the plaintiffs’ assertions that the agreement between Mr. Frank and Lincoln Park .was negotiated in good faith, at arm’s length and with no intent to defraud the Government, and that Mr. Frank charged non-Medicare patients at the same rate as Medicare patients. There was no adequate evidence that plaintiffs attempted unsuccessfully to hire a physical therapist at a rate lower than $6.00 per treatment, or that Mr. Frank’s particular talents justified the premium.[9] On the whole, we *634 cannot find the decision of the Plan, affirmed by the Committee, to be arbitrary, capricious or unsupported by the evidence.
it is therefore ordered, for the reasons stated above, that defendant’s motion for summary judgment be granted. The petition is dismissed.
Plaintiffs’ petition for writ of certiorari was denied, 444 U.S. 867 (1979).

 42 U.S.C. § 1395 et seq. (1970), hereinafter referred to as the “Medicare Act.”

 20 C.F.R. 405.415(d)(3)(1970). This regulation is now to be found in Title 42, Part 405 of the Code of Federal Regulations. See 42 Fed. Reg. 52,826 (1977).

 A fiscal intermediary is a public agency or private organization which contracts with the Secretary of Health, Education, and Welfare, under 42 U.S.C. § 1395h(a), to determine the amount of reimbursement to be paid to providers and to make the payments.

 Plaintiffs filed suit in United States District Court for the District of New Jersey on September 18, 1974 alleging the same cause of action presented here. That suit, Civil Action No. 74-1431, was dismissed for lack of jurisdiction without prejudice to plaintiffs’ right to bring suit in the Court of Claims. The Third Circuit affirmed the District Court’s decision on May 4, 1978.

 20 C.F.R. § 405.415(d)(3) (1970).

 Redesignated at 42 Fed. Reg. 52,826 (1977) as 42 C.F.R. § 405.426.

 Plaintiffs also seek review of Lincoln Park’s claim for owners’ compensation representing salary to both Mr. and Mrs. Turco for the six-month period ending June 30, 1967, which was disallowed because the sum, although listed as accrued in Lincoln Park’s books, was not actually paid to the owners during that period, as required by 20 C.F.R. § 405.426(d)(2). This determination is supported by substantial evidence.

 These guidelines established that a fee of $15.00 per hour or $4.00 per treatment, whichever was less, was reasonable compensation for rotational physical therapy.

 In their brief in opposition to defendant’s motion, plaintiffs assert that (a) Mr. Frank has sworn that no one to his knowledge charged less than $6.00 per treatment in the geographical area, and (b) plaintiffs were unsuccessful in attempts to obtain a salaried in-house physical therapist (this latter statement is unsupported by any affidavit). Again, no reason is given why this information could not have been supplied to the Committee in specific and verified form; also, we cannot now say that it would or should have made a difference in the determination.