BEVERLY ENTERPRISES, Plaintiff,

v.

Joseph A. CALIFANO et al., Defendants.

Civ. A. No. 76-1211.

United States District Court,
District of Columbia.

July 30, 1978.

Thomas L. Patten and Allen B. Green, Washington, D. C., for plaintiff.

Jason Kogan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

Plaintiff Beverly Enterprises (Beverly), in challenging the decision of an HEW hearing panel to hold it liable for alleged Medicare overpayments, seeks to enjoin the Secretary of HEW from suspending Medicare overpayments. Defendants request this Court to affirm the agency decision that plaintiff is liable, thereby permitting them to recover the alleged overpayments by suspending Medicare disbursements. Plaintiff is a California corporation that owns and operates two nursing home facilities, Beverly Manor Convalescent Hospital East and West, and is a provider of health care services under the Medicare program. See 42 U.S.C. § 1395g. Defendants are the Secretary of HEW and Mutual of Omaha, a "fiscal intermediary" which presently serves as the Secretary's agent in connection with the disbursement of Medicare funds to plaintiff. Presently before the Court are the parties' cross-motions for summary judgment and defendants' alternative motion to dismiss.

## BACKGROUND

On August 2, 1969, plaintiff Beverly Enterprises entered into a contract to acquire all the stock in Intercommunity Investors Ltd., Inc. and D.B.N. & W., corporations associated with the Whitmar Nursing Complex West facility, and Whitmar Nursing Complex, Inc. and Vector Corp., corporations associated with the Whitmar Nursing Complex East facility. One of the provisions in these virtually identical agreements provided:

> Shareholder agrees to save, indemnify and hold harmless Beverly from any liabilities not reflected in said [balance sheet] statements or incurred in the ordinary course of business through closing date. Such liabilities against which Beverly shall be held harmless shall include, but not be limited to, any liabilities to Medicare, Medi-Cal, Blue-Cross or any other health insurance plan, whether governmental or private, and whether presently known or unknown.

The acquisition pursuant to this contract took place on October 24, 1969, and plaintiff commenced to operate the two facilities.

On July 12 and 13, 1971, plaintiff received notifications from Blue Cross of Southern California, the fiscal intermediary then serving plaintiff's nursing home facilities, that its audit and review of the accounting periods ending November 30, 1967, November 30, 1968, and December 31, 1969 revealed overpayments totaling $59,483 in connection with the Whitmar West facility and $203,509 in connection with the Whitmar East facility. On August 10, 1971, Beverly appealed the overpayment decisions and denied it was liable.

On December 15, 1971, representatives of Blue Cross, Beverly Enterprises, and the former owners of the nursing homes attended a meeting to discuss the issue of liability for the alleged overpayments. At the meeting, Beverly agreed to submit documents relating to the issue of liability. On January 20, 1972, Blue Cross notified Beverly that it was affirming the decision that had been appealed. The letter stated:

> Since the question of who should be held responsible for the balance due Medicare Program is still unanswered pending receipt and determination of the terms of the reorganization agreement, we are holding both former and current owners responsible
>
> .     .     .     .     .

Administrative Record at 468–69. Beverly was informed that the appeal procedure at the intermediary level had been concluded. However, plaintiff did not appeal this decision. On February 10, 1972, the former owners of the Whitmar facilities received a similar notification from Blue Cross.

On February 29, 1972, Christopher Carr, counsel for Blue Cross, sent a letter to Albert Lin, an employee of Blue Cross, stating that it appeared that the former owners, rather than plaintiff, were liable for the overpayments. Administrative Record at 479–80. Plaintiff, at some later point, was sent a copy of this letter. On March 29, 1972, Howard T. Chang, assistant regional attorney for HEW, wrote Christopher Carr that he concurred that the former owners were the proper parties against whom HEW should proceed. *Id.* at 481.

In 1975, after Blue Cross was apparently unsuccessful in its attempt to recover the overpayments from the former owners, the matter was referred to the Bureau of Health Insurance (BHI) of the Social Security Administration. BHI informed plaintiff in a letter dated August 1, 1971, that the former owners were contesting liability and requested Beverly to submit additional documents concerning this issue. At the end of January 1976, the Government Accounting Office (GAO) informed Beverly that HEW had reported for collection plaintiff's alleged indebtedness to the United States in connection with the Whitmar East and West facilities.

On June 30, 1976, the day Mutual of Omaha planned to institute suspension of reimbursement payments, plaintiff brought suit in this Court for declaratory and injunctive relief on the ground that defendants' proposed suspension of current Medicare payments was arbitrary and capricious and violated due process. On June 30, 1976, defendants agreed to reconsider their proposed course of action and afford plaintiff 30 days notice if they again decided to suspend plaintiff's Medicare disbursements. On November 10, 1976, defendants afforded plaintiff notice of their intention to institute such a suspension.

Plaintiff renewed its motion for declaratory and preliminary injunctive relief. On December 16, 1976, the Court granted plaintiff's motion for preliminary injunction. The Court held that it was "an abuse of the Secretary's discretion and a violation of due process for the Secretary to suddenly recoup the alleged overpayments after the passage of over three years and without any accommodation to whatever equities might have accrued to plaintiff's position during that span of time." 432 F.Supp. 1073, 1077–78 (D.D.C. 1976). Defendants were prevented from suspending Medicare disbursement until after defendants "voluntarily afforded plaintiff further administrative recourse and until such time as this Court has made a final determination as to the merits of plaintiff's claim." 432 F.Supp. at 1079.

A panel comprised of members of the Health Care Financing Administration of HEW held a hearing on the question of liability on May 25, 1977. On September 28, 1977, the hearing panel notified Beverly of its determination to hold it liable for the overpayments. Plaintiff requested this Court, and the Court agreed, to hear its motion for summary judgment and to stay the second administrative hearing on the amount of the overpayment until this Court renders a decision on the issue of the proper party to be held liable for the overpayments.

## MERITS

### A. Standard of Review.

■ Although the Medicare Act itself does not expressly provide for judicial review of a determination whether a party is liable for Medicare overpayments or a decision to suspend Medicare disbursements in order to recoup overpayments,[1] judicial review is available under the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. (1976). See Rothman v. Hospital Service of Southern California, 510 F.2d 956, 958–59 (9th Cir. 1975); Aquavella v. Richardson, 437 F.2d 397, 400–03 (2d Cir. 1971); Humana of South Carolina, Inc. v. Mathews, 419 F.Supp. 253, 256–58 (D.D.C.1976). The arbitrary and capricious standard of review is applicable to this Court's review of the hearing panel's factfinding. See 5 U.S.C. § 706(2)(A). However, the de novo standard is appropriate for review of all questions of law. See 5 U.S.C. § 706.

Unlike most APA cases, this case does not primarily involve a review of the agency's factfindings. In fact, plaintiff does not claim that there is inadequate evidence to support the determination that Beverly is the party liable for the overpayment. Rather, plaintiff claims that such a decision would violate defendants' own regulation, 20 C.F.R. § 405.1885(a) (1977), which basically prohibits an intermediary from reopening a determination more than three years from the date of the notice of the

intermediary determination. Plaintiff also claims that defendants are estopped from recouping the alleged overpayments from it.

### B. Whether Defendants are Barred by 20 C.F.R. § 405.1885(a).

20 C.F.R. § 405.1885(a) (1977) provides:

(a) A determination of an intermediary, a decision by a hearing officer or panel of hearing officers, a decision by the Board, or a decision of the Secretary may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary officer or panel of hearing officers, Board, or Secretary, . . . on the motion of the provider affected by such determination or decision to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the intermediary or Board hearing decision, or where there has been no such decision, any such request to reopen must be made within 3 years of the date of notice of the intermediary determination.

Plaintiff contends that in March 1972, there was a "determination by the intermediary" in favor of plaintiff. Plaintiff argues that since defendants did not notify plaintiff again concerning liability for the overpayments until mid-1975, more than three years after the prior determination, defendants are barred from reopening the issue of liability in this case.

■ Plaintiff bases the argument that there was a favorable determination by the intermediary in March 1972 on a series of informal communications between Beverly and Blue Cross that took place between December 1971 and March 1972. Plaintiff claims that at the meeting on December 15, 1971, it was agreed that Mr. Carr, counsel for Blue Cross, would decide the proper party against which Blue Cross would proceed to collect the overpayments. According to plaintiff, it was further agreed that after Mr. Carr received copies of the acquisition agreements for Whitmar East and West, he would make the decision that

---

1. The statutory background for this action is discussed in this Court's memorandum of December 16, 1976. Beverly Enterprises v. Mathews, 432 F.Supp. 1073, 1074–75 (D.D.C.1976).

would be binding on all parties. Plaintiff claims that after it received the January 20, 1971 letter which seemed to be contrary to the understanding reached at the December meeting, Robert W. Pommerville, counsel for Beverly, called Mr. Carr and was reassured that this letter created an incorrect impression. Plaintiff also points to the copies of the letters from (1) Christopher Carr to Albert Lin, which indicated Mr. Carr's view that the former owners were liable and from (2) Howard Chang to Christopher Carr, in which he concurred in Mr. Carr's view. Mr. Carr allegedly reiterated the view that the former owners were liable in subsequent conversations with Beverly's attorney. Finally, Beverly notes that its counsel wrote and expressed to Mr. Carr his pleasure at receiving a favorable determination on liability; neither Mr. Carr nor any Blue Cross employee did anything to dispel this notion.

The hearing panel, however, found that, at the December 15, 1971, meeting, the issue of the proper party to be held liable was merely discussed. It mentions no agreement delegating authority to Mr. Carr to make a final determination. The panel based its legal conclusion on the following findings:

> We find that the letters of Mr. Carr and Mr. Chang are not determinations, but simply constitute their personal opinions which were not binding on the intermediary. The Carr and Chang letters were not prepared for, nor addressed to, Beverly Enterprises. In fact, an examination of the evidence shows that copies of the letters were not sent to Beverly Enterprises, Inc. by Mr. Carr or Mr. Chang. While it is true that Beverly Enterprises received copies of these documents at a later date, this was not as a result of any official notification by the intermediary. Rather it was because an attorney for Beverly Enterprises had apparently requested them from Mr. Carr. In this regard the panel realizes that the attorney for Beverly Enterprises had been in touch with Mr. Carr and that he may have misinterpreted the nature of Mr.

Carr and Mr. Chang's position in the matter. The fact remains, however, that neither Mr. Carr or [sic] Mr. Chang had any authority to make final determinations initially or on appeal for the intermediary or the Medicare Bureau. Just as importantly, neither the attorney for Beverly Enterprises nor any other Beverly representative ever received any document addressed to them which would be considered a favorable determination disposing of Beverly's appeal in this matter.

Administrative Record at 7. Upon a review of the entire administrative record, the Court concludes that these findings are not arbitrary and capricious.

The Court also concurs with the hearing panel's interpretation of the regulation that the series of communications between Beverly and defendants culminating with the Carr and Chang letters do not constitute a determination within the meaning of 20 C.F.R. § 405.1885(a). The letters from Mr. Carr and Mr. Chang cannot be reasonably viewed as a final determination, even if considered in light of other oral communications to plaintiff. Neither letter was addressed to the plaintiff. Moreover, the signatures on the letters do not suggest that Mr. Carr or Mr. Chang was acting in a representative capacity for Blue Cross of Southern California or HEW, respectively. Mr. Carr's letter, in which he stated that "it appears that the former owners must be held responsible," by no means conveys a tone of finality.[2] See Administrative Record at 471–80. Mr. Chang merely notified Mr. Carr that he concurred with Mr. Carr's view that the former owners should be held liable. There is no indication that Blue Cross or HEW ever adopted the position that Beverly was not liable or ever communicated this position to plaintiff.

Beverly's position to the contrary is particularly untenable in light of the fact that it received a written notice from Blue Cross stating that Blue Cross was holding both former and current owners liable "since the question of who should be held responsible for the balance due Medicare program is

---

2. Mr. Carr asked Mr. Lin to inform him if he had "any further thoughts as to responsibility for these overpayments." Administrative Record at 480.

still unanswered." This notice also states that "[t]his concludes the appeal procedure at the intermediary level." Administrative Record at 468. Finally, both this notice and the notice of July 12, 1971 were addressed to plaintiff, written on Blue Cross stationery, and signed on behalf of Blue Cross.[3]

Thus, the Court concludes that there has been no determination within the meaning of 20 C.F.R. § 405.1885(a). Accordingly, the Court will grant summary judgment for defendants on this issue.

### C. Whether Defendants are Estopped from Recovering Overpayments.

■ Plaintiff claims that defendants are estopped from recovering overpayments from it. It contends that it satisfies the four-part test for estoppel against the government set forth in *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970), which requires:

(1) the party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

The hearing panel determined that "it was unreasonable for Beverly to conclude that it was not liable to the Medicare Bureau for the overpayments on the basis of any action taken by the Medicare Bureau or its intermediaries." Administrative Record at 8. For the reasons stated in the above discussion with respect to whether the facts constitute a determination within the meaning of 20 C.F.R. § 405.1885(a), the Court finds that the finding of the hearing panel

is supported by the evidence and is not arbitrary and capricious.

The Court determines, on the basis of this finding, that the second element of the *Georgia-Pacific* test is not satisfied. Since all elements of the *Georgia-Pacific* test must be satisfied in order to establish equitable estoppel against the Government, the Court concludes that the defendants are not estopped from holding plaintiff liable for the overpayments.[4] Accordingly, the Court will grant summary judgment for defendants on this issue.

### CONCLUSION

The Court will grant summary judgment in favor of defendants on both of the claims presented. Accordingly, the entire action is dismissed with prejudice.

**3.** The Court therefore rejects plaintiff's argument that the series of communications and events between December 1971 and March 1972, if considered in the context of the informal procedures available, would constitute a determination. The administrative procedures found to be constitutionally defective, *see Coral Gables Convalescent Home, Inc. v. Richardson*, 340 F.Supp. 646 (S.D.Fla.1972), pertained to whether a challenging party is entitled to some type of hearing rather than to the adequacy of the notice to affected parties. Moreover, it is

apparent from the letters to plaintiff, dated July 12, 1971, and January 20, 1972, that Blue Cross of Southern California's notification procedure was more formal than plaintiff asserts.

**4.** Although the Court finds the hearing panel's statement of the law of equitable estoppel against the Government to be inadequate and overly restrictive, it is immaterial to the resolution of this issue since plaintiff failed to satisfy a critical element on the estoppel claim.