507 F.Supp. 221 (1980)
RIVER GARDEN HEBREW HOME FOR THE AGED, a corporation not for profit, Plaintiff,
v.
Joseph A. CALIFANO, Jr., as Secretary of Health, Education, and Welfare; Blue Cross Association/Blue Cross of Florida, Inc., a corporation; and the United States of America, Defendants.
No. 78-642-Civ-J-WC.
United States District Court, M. D. Florida, Jacksonville Division.
July 16, 1980.
*222 Herman S. Paul, Jacksonville, Fla., for plaintiff.
Carl H. Harper, Regional Atty., Dept. of HEW, Atlanta, Ga., Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for defendants.

OPINION
CASTAGNA, District Judge.
The Court has for adjudication the motions of Defendant, Joseph A. Califano, Jr. as Secretary of Health, Education and Welfare (hereinafter referred to as Secretary or HEW) for Summary Judgment and for dismissal of the complaint as to Defendant Blue Cross Association/Blue Cross of Florida, Inc. (hereinafter referred to as Blue Cross or as fiscal intermediary). A hearing was held on these motions on April 11, 1980, at which time the parties consented to dropping Blue Cross as a party and the Court accepted such consent.
This action takes place in the context of the Medicare system. Federal Health Insurance for the Aged, popularly known as Medicare, was enacted by Congress in Title I of the Social Security Amendments of 1965, P.L. 89-97, §§ 101-122, 79 Stat. 286, July 30, 1965, as Subchapter XVIII of the Social Security Act, codified as 42 U.S.C. §§ 1395-1395qq (1976), as Amended 42 U.S.C. §§ 1395b-1395rr (Supp. II). The system contains two substantively distinct parts, one providing insurance for hospital and related post-hospital services, known as Part A, 42 U.S.C. §§ 1395c-1395i-2 (as amended), the other providing insurance for supplementary medical services, primarily physicians services, known as Part B, 42 U.S.C. §§ 1395j-1395w (as amended).
This action concerns Part A and seeks judicial review of a decision by the Provider Reimbursement Review Board (PRRB) pursuant *223 to § 1395oo(f)[1] and reimbursement of sums withheld by Blue Cross for alleged overpayments for the fiscal years ending December 31, 1973 and December 31, 1974. The Court has jurisdiction for judicial review of the final administrative decisions of Plaintiff's provider reimbursement claims under Subchapter XVIII of the Social Security Act as provided by Section 1878(f) of the Act, 42 U.S.C. § 1395oo(f). This section provides for judicial review of adverse decisions by the PRRB or of a subsequent review determination by the Secretary.
The scope of the Court's review of the final decision of the PRRB is determined by 5 U.S.C. § 701 et seq. as mandated by § 1395oo(f). Section 706(2)(E) of Title 5 U.S.C. provides that as to questions of fact, the Court must determine whether, upon review of the record as a whole, the decision of the PRRB is supported by substantial evidence. The Medicare Act also provides that judicial review of PRRB decisions must be based on substantial evidence in the record. § 1395oo(d). As to questions of law, the scope of review is a determination of whether the Secretary exceeded his authority in promulgating the regulations under examination. 5 U.S.C. § 706(2)(C). The validity of regulations will be upheld and the Secretary will not be held to have exceeded his authority if the regulations are reasonably related to the purposes of the enabling legislation. See, Weinberger v. Salfi, 422 U.S. 749, 774, 95 S.Ct. 2457, 2471, 45 L.Ed.2d 522 (1975); Morning v. Family Publications Service, Inc., 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973); Beverly Enterprises v. Califano, 446 F.Supp. 599 (D.D.C.1978); Beverly Enterprises v. Califano, 460 F.Supp. 830 (D.D.C. 1978).
Pursuant to § 1395cc, a provider of services agrees not to charge Medicare beneficiaries directly but instead agrees to receive payment from the government for services provided. These payments or reimbursements for services provided is commonly accomplished through the use of fiscal intermediaries. In the present case the fiscal intermediary was Blue Cross which made payments to the Plaintiff provider, River Garden Hebrew Home for the Aged (hereinafter referred to as River Garden).
Fiscal intermediaries are private, nongovernmental entities, frequently health and accident insurance companies nominated by a provider or group of providers. They enter into contracts with HEW and serve as its agents for many functions, such as hospital audits, information dissemination, and fund disbursements, § 1395h. Pursuant to § 1395f(b), the total amount to be paid to a provider shall be the reasonable cost of services rendered to Medicare beneficiaries as determined under § 1395x(v) and the appropriate regulations, § 405.401 et seq. The provider is required to apportion costs between the certified and non-certified portions of its facility. This apportionment will insure that "the costs with respect to individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program." 42 C.F.R. § 405.451(b).
The amount of reimbursement actually due a provider is determined after the close of the provider's fiscal year on the basis of a cost report which is filed annually and is subject to audit, § 405.406(b). However, since lump sum payments made at the end of the fiscal year would be inadequate to meet the obvious liquidity needs of providers, interim payments are disbursed to providers at least monthly, § 1395g(a). These interim payments are based on estimates prepared from the previous year's cost reports with appropriate adjustments to bring, as closely as possible, the current years rate of interim payment into agreement with the current year's costs. § 405.454(e).
Following submission of cost reports, an initial retroactive adjustment is made pursuant to § 405.454 to correct the difference *224 between the amount of interim payments made and the costs as shown on the cost reports. This initial adjustment period is known as a desk review and the cost reports received are accepted as correct unless clearly erroneous. Thereafter, an audit may be performed which may consist of either a limited scope audit, verifying only specified portions of the cost report, or a full scope audit. The result of the audit may lead to another retroactive adjustment to bring the interim payments into agreement with the total allowable cost apportioned to the program. § 405.454(e).
In August of 1976, the intermediary during its audit of River Garden's cost report for 1975 (Administrative Record 46, hereinafter referred to as A.R.) properly apportioned costs between the certified and non-certified portions of the provider's facility. The formulas devised for the 1975 cost report to separate certified part and non-certified part nursing costs were applied to the 1973 and 1974 cost reports to arrive at the retroactive adjustments that are now in dispute. The intermediary first discovered a problem with the provider's cost allocation during its limited scope audit of the 1974 cost report which was completed on November 7, 1975.[2] The audit report contained the following comment:
It was noted that some of the cost finding statistics used by the provider are not acceptable according to AB781-A. The intermediary will review these statistics during the subsequent audit, and if any material change in reimbursement is determined from the review this cost report will be revised. (A.R. 460; see also, A.R. 229).
Blue Cross did not take further steps to investigate and make any necessary adjustments to the current cost report despite the fact it was aware that certain matters were unacceptable. Subsequently, the fiscal intermediary's central office, Blue Cross Association, performed a review of the Florida intermediary's operations. As part of the Association overall evaluation, it reviewed River Garden's cost reports and the intermediary's desk reviews and limited scope audits of those reports. (A.R. 45). In regard to River Garden, the Association's review report dated April 13, 1976 contained the following comment:
The provider appears to have incorrectly allocated certain costs between the certified and non-certified portions of the facility. Specifically, rather than allocate such cost centers as depreciation, housekeeping, and operation of plant based on actual square footage, the majority of these costs were allocated to nursing service which was later allocated on the basis of gross salaries. This resulted in a distortion of the cost finding process as the distinct part received more than its correct share of these costs centers; (emphasis added), (A.R. 45; see also, A.R. 229).
Based on the application of the formula developed for 1975 cost report, the intermediary recalculated the provider's reimbursable costs. The intermediary finally determined after another review that the provider was overpaid $12,972 for 1973 (A.R. 257, 117) and $12,263 for 1974 (A.R. 387, 102) for a total of $25,235 presently in dispute. The provider then instituted an appeal to the PRRB attacking the post audit or retroactive adjustments which recalculated the reimbursable costs attributable to the certified part of its facility for fiscal years 1973 and 1974. (A.R. 490-491 and A.R. 485-488). The PRRB upheld the intermediary's determination that the provider had been overpaid in the total amount of $25,235 and also affirmed the intermediary's right to re-open the cost reports and retroactively reallocate the costs at issue.
The Court finds that the PRRB's decision that the intermediary properly adjusted the provider's allocation of reimbursable and non-reimbursable costs was appropriate and correct. The evidence in the Administrative Record substantially supports the PRRB decision.
*225 The next consideration for review is the propriety of the intermediary reopening previously audited and settled cost reports and retroactively adjusting those reports. The Medicare Act incorporates two distinct types of corrective adjustments: (1) adjustments to bring a provider's interim payments into agreement with the audit results for a given fiscal period, which are required by § 1395g, § 405.454(f), and (2) adjustments to correct flaws in the aggregate reimbursement due to an erroneous method of determining reimbursement costs, dictated by § 1395x(v). The Court in Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2nd Cir. 1973) noted that although § 1395x(v) addresses itself to rectifying erroneous methods of determining cost, it at no time speaks of an audit as a method of determining cost. Accordingly the Kingsbrook Court stated, "it is apparent that Congress intended the phrase `method of determining cost' to refer to the formula for cost calculation and not to the mechanics of certifying the proper implementation of that formula." Id. at 670 n.20. Although this may be true in a strict sense, the overall application of § 1395g and § 405.454(f) must encompass the methods of determining costs under § 1395x(v). Section 405.454(f)(1) states that retroactive adjustments "will be made at the end of the reporting period to bring the interim payments made to the provider during the period into agreement with the reimbursable amount payable to the provider for the services rendered to program beneficiaries during that period." Subsection (3) states that "(t)o determine the retroactive adjustment, the amount of the provider's total allowable cost apportioned to the program for the reporting year is computed." (emphasis added). Logically to determine the correct retroactive adjustment, the correct reimbursable amount must be calculated and it is implicit in this calculation that the proper method of cost allocation must be used. If the method of allocation was incorrect the reimbursable amount will in all likelihood also be incorrect. So, in this perspective, § 1395g and § 405.454(f) incorporate § 1395x(v).
§ 405.1885 provides inter alia that the intermediary may reopen a determination as long as it is done within three years from the date of the notice of the intermediary determination. An intermediary determination is defined as the amount of the total program reimbursement due the provider for the period covered by its cost report. § 405.1801(a)(i). The date of the notice is prescribed in § 405.1803(a) which states that upon receipt of a provider's cost report, the intermediary shall within a reasonable period of time furnish the provider "a written notice reflecting the intermediary's determination of the amount of program reimbursement." As to what constitutes a reasonable period, § 405.1803(a) refers to § 405.1835(b) which although is concerned with a different matter mentions twelve months as a period of time. Finally, § 405.1803(b) states that the intermediary's determination constitutes the basis for making the retroactive adjustment required by § 405.454(f). Thus to summarize generally the workings of foregoing portion of this regulatory scheme: § 405.1885 allows the intermediary to reopen an earlier completed determination and to reconsider its overall correctness, which could entail the review of any retroactive adjustment made of the total reimbursable amount, and of the methods used in allocating costs. As applied to the present action, Blue Cross received River Garden's 1973 cost report on April 30, 1974 (A.R. 277) and its written notice of determination is dated March 6, 1975 (A.R. 282). Thus Blue Cross furnished River Garden with the notice of determination within twelve months from the date of receipt of the cost report. Blue Cross' notice of retroactive adjustment for 1973 cost report is dated February 17, 1977 (A.R. 208), which means that the cost report was reopened and adjusted within three years from the notice of determination dated March 6, 1975. The same process was simultaneously performed on the 1974 cost reports and it was likewise timely reopened as the notice of the retroactive adjustment is dated February 25, 1977 (A.R. 387) and the notice of determination is dated December *226 1, 1975 (A.R. 415). As was previously mentioned, the review by Blue Cross revealed that the methods used to allocate overhead costs were incorrect which consequently lead to the reimbursable amount being incorrect.
While the mechanical application of the regulations were performed in accordance with its requirements, the Court's concern reaches beyond the proper application to the validity and fairness of the regulation itself. The validity of the regulations "will be sustained so long as [they are] `reasonably related to the purposes of the enabling legislation'...." Morning, supra, 411 U.S. at 369, 93 S.Ct. at 1660 (1973), quoting, Thorpe v. Housing Authority, 393 U.S. 268, 280-281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969); followed, Florida v. Mathews, 526 F.2d 319, 323-24 (5th Cir. 1976); Johnson's Professional Nursing Home v. Weinberger, 490 F.2d 841, 844 (5th Cir. 1974).
Congress has directed the Secretary to ensure that the amounts paid to providers of services shall be no more than the reasonable cost of such services. § 1395g. The Secretary's statutory obligation is to promulgate regulations ensuring that the costs of services provided to non-Medicare patients will not be borne by the Act. § 1395x(v), see also, Springdale Convalescent Center v. Mathews, 545 F.2d 943, 955 (5th Cir. 1977). To fulfill this statutory obligation, § 405.1885 along with §§ 405.1803, and 405.454(f) have been promulgated as part of the regulatory framework which as previously discussed provide for the reopening and readjusting of prior years cost reports and corresponding reimbursable amounts. In judging whether these regulations are valid under the reasonably related test, the Secretary's interpretation of the statutory scheme is entitled to considerable deference, Florida v. Mathews, supra at 323 n.10, and River Garden "shoulders a difficult burden" of proving that the regulations conflict with the purpose of the enabling legislation. Id. at 323.
Both sections 1395x(v)(1)(A)(ii) and 1395g contemplate making corrective adjustments for improper or erroneous payments of medicare funds. These adjustments help ensure that the provider is reimbursed only for the certified reasonable costs. This dispute involves the retroactive adjustment of the erroneous application of a method of allocating certain overhead costs. This retroactive adjustment is contrasted to the retroactive adjustment of a new method of allocation.[3] The present adjustment is covered by § 1395g along with § 405.454. Section 405.1885 allows these corrections to be made retroactively for a certain period of time. This regulation clearly fulfills the explicit congressional statutory directive to reimburse only certified reasonable costs, and thus they are valid as they are reasonably related to the purposes of the enabling legislation. This *227 finding satisfies the Court's scope of review that the Secretary has not exceeded his authority in promulgating the pertinent regulations.
However, the Court is not unmindful of the harsh financial impact that can result from these retroactive adjustments. The present case is a good example. In the latter part of 1976, Blue Cross assisted River Garden in preparing its cost reports for 1975 including the proper allocation of overhead costs. At this time the damage had already occurred for 1975 and perhaps for most of 1976. River Garden was no longer able to adjust its allocation to recoup its then determined non-Medicare costs from its non-Medicare patients. But for these two years any losses suffered are understandable and reasonable as the intermediary having just determined the allocation was wrong[4], could not have notified the provider any sooner so as to provide the opportunity to correct the allocation method and thus avoid any losses. However, the harshness arises when § 405.1885 allows the intermediary to go back further and recover overpayments due to improper cost allocations. Similarly here, the provider is unable to recoup these costs from its non-Medicare patients. Unlike the situation when the intermediary first detected the improper allocation, if the intermediary had detected the error in the earlier audits, the provider would have had the opportunity to adjust its allocation and not suffer the loss of the later unrecoupable costs.[5] This observation is tempered by the recognition it is the provider's own mistake that led to this somewhat harsh result. Also, the provider's solution to this problem may lie with its own ability to develop contractual procedures to recoup its costs from patients who were originally undercharged, though admittedly this would seem to be somewhat difficult to accomplish. The present harshness is offset by the windfall the provider may be able to receive under the present regulatory scheme. A windfall would result where a retroactive upward adjustment is obtained because the provider was underpaid in an earlier year even though the provider had recovered these costs from its non-Medicare patients. This windfall can also be said to potentially be a rather inequitable advantage to a provider. Finally, the Court can do no more than encourage River Garden and other similarly situated providers to seek redress from Congress.
As to the other issues raised by the provider, the Court finds that the equitable estoppel argument is untenable and that the PRRB's decision complied with the procedural requirements of the applicable regulations.
It is hereby
ORDERED:
1. That Defendant Health, Education and Welfare's Motion for Summary Judgment is granted, as the Provider Reimbursement Review Board's decision is affirmed.
2. That Summary Final Judgment is entered in favor of the Defendants and against the Plaintiff. Each party to bear its own costs.
3. That Defendant Health, Education and Welfare's Motion to Dismiss Blue Cross as a party defendant is granted.
NOTES
[1] All references to sections mean sections of Title 42 of the United States Code, 1976 Edition, including any supplement thereto, or to Section in the Code of Federal Register, unless otherwise indicated.
[2] The intermediary's notice of its determination of program reimbursement is dated December 1, 1975. Such written notice is required to be furnished to a provider in accordance with § 405.1803. This will be further elaborated on, infra.
[3] If the present retroactive adjustment was due to a new change in the method of allocating costs, Springdale, supra, might have been controlling. The Fifth Circuit decided in Springdale that under § 1395x(v)(1)(A), the Secretary of HEW has authority to make suitable retroactive corrective adjustments to a provider of medical services for any fiscal period. This is contrasted with § 1395g whose retroactive application is limited in duration by § 405.1885. Notwithstanding this contrast, the holding in Springdale may be construed to be restricted to its attendant circumstances. Springdale sanctioned the recapture of the excess depreciation taken on assets upon the occurrence of certain events. However, over the entire life of a depreciable asset, there is no difference between accelerated and straight line depreciation. The higher payments to a provider generated by the accelerated methods in the early years are recouped by reduced payments in later years. In comparison, the straight line method of depreciation would generate even level payments over the life of the asset to a provider. The important point is that the total payments would be the same under either method. The recapture regulation would leave a provider no better or worse off than if the straight line method was chosen in the first place. Accord, Fairfax Nursing Center, Inc. v. Califano, 590 F.2d 1297 (4th Cir. 1979). This absence of an adverse effect on the Provider over the long run is distinguished from the present facts where the retroactive adjustment as will later be more fully elaborated, will make it very difficult for the provider to recover its costs from previous years if it can at all, and likely result in the Provider itself absorbing its unreimbursed costs.
[4] The note to the 1974 limited scope audit showing knowledge that the allocation method may be wrong has no real impact on the point being made here and would only be pertinent to the availability of estoppel.
[5] Despite this harshness, it cannot be said the regulation is not reasonably related to the legislative objectives. It is beyond the Court's province to judge whether another regulation is wiser or more practical under the circumstances. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 19, 96 S.Ct. 2882, 2894, 49 L.Ed.2d 752 (1976); Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963).