**CAMBRIDGE HOSPITAL ASSOCIA-TION, INC., formerly known as Memorial Hospital, Inc., Plaintiff,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

Civ. No. 4–86–435.

United States District Court,
D. Minnesota,
Fourth Division.

March 13, 1987.

Eric J. Magnuson, Ruth A. Mickelsen, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for plaintiff.

Jerome G. Arnold, U.S. Atty., and James Lackner, Asst. U.S. Atty., Minneapolis, Minn., and Donna Morros Weinstein and Marlene R. Abrams, Dept. of Health and Human Services, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment. Plaintiff's motion will be granted.

## FACTS

Plaintiff Cambridge Hospital Association, Inc. (Cambridge Hospital), formerly known as Cambridge Memorial Hospital, Inc., is an 86–bed non-profit acute care operating hospital located in Cambridge, Minnesota. Cambridge Hospital is and has been a provider of medical services to Medicare beneficiaries pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395f(b), 1395g, and 1395x(v)(1)(A).

Pursuant to the Medicare Act plaintiff applied for operating cost reimbursement from the defendant, Secretary of Health and Human Services, for fiscal year 1982.[1] (Plaintiff's fiscal year ends September 30.) The Medicare Act authorizes provider reimbursement for costs incurred in providing in-patient hospital services to medicare beneficiaries. Following a routine audit, the plaintiff's "fiscal intermediary" (Blue Cross and Blue Shield of Minnesota) for the year in question issued a "notice of program reimbursement" disallowing certain expenses claimed by the plaintiff. The amount disallowed was $114,072. The basis for the fiscal intermediary's decision to disallow certain of plaintiff's claimed expenses was its finding that plaintiff was not within the geographical borders of the Twin Cities Standard Metropolitan Statistical Area (SMSA).[2] Under the Medicare Act, hospitals located within the SMSA are entitled to slightly higher reimbursement for certain incurred expenses. Prior to October, 1983,[3] Isanti County was designated as a non-SMSA county; however, due to population fluctuations, plaintiff in 1981 requested reclassification as an SMSA hospital.[4] Plaintiff points out that the 1980 fed-

---

1. Plaintiff also applied for reimbursement for fiscal years 1980 and 1981. When the Secretary disallowed certain expenses claimed by plaintiff, plaintiff filed an action in this Court for review. By order dated March 3, 1986 the Court granted the Secretary's motion to dismiss, on the ground that plaintiff's action was untimely. Subsequently, plaintiff filed this action, seeking review only as to FY 1982. Defendant concedes this action is timely.

2. Under the applicable standards, an area qualifies as an SMSA in one of two ways: there is a city with a population of at least 50,000 in the area, or the area is an urbanized area of at least 50,000 with a total metropolitan statistical area population of at least 100,000. See 42 C.F.R. §§ 405.460, 460(b)(1)(ii). A provider may be reclassified only in the event that its original classification is at variance with the criteria established by the applicable regulations, i.e., the original classification was in error. 42 C.F.R. § 405.460(d). Plaintiff applied for a reclassification based on the 1980 census figures. The Secretary ruled that a county's SMSA status is generally effective only after it has been officially announced by the Office of Management and Budget even though the change may have been based on an earlier census, and that, even

if OMB were to announce (as it did in 1983) that Isanti County was entitled to classification as an SMSA, the change would be applied prospectively, not retroactively. 42 C.F.R. § 405.460(a)(2). Finding that plaintiff was classified correctly for fiscal years 1980 and 1981 based on the criteria available at that time and that the classification system is not subject to retroactive change, the Secretary declined to reclassify plaintiff for the years in question. See PRRB Official File, 25–26; PRRB Manual § 2510.3.

3. Isanti County was classified as an SMSA effective for cost reports beginning on or after October 1, 1983. The classification of Isanti County as an SMSA was announced by the Federal Office of Management and Budget September 1, 1983. 48 Fed.Reg. No. 171 (1983).

4. Plaintiff's argument for reclassification is essentially that, due to the fact that it competes with and has competed with SMSA-designated hospitals in Minneapolis/St. Paul, Minnesota and Forest Lake, Rush City, and Coon Rapids, Minnesota, it was entitled to SMSA classification from at least 1980, based on the 1980 census documenting dramatic population growth in Isanti County. See Transcript of Proceedings

eral census revealed that as of 1980, Isanti County actually satisfied all of the urban criteria to be classified as an SMSA. Based on this factor, plaintiff's request for reclassification was approved by Blue Cross. However, the request was denied by the Health Care Finance Administration, on the ground that Isanti County was not officially classified as an SMSA until October 1, 1983. Accordingly, Blue Cross disallowed certain expenses calculated by plaintiff based on the Twin Cities SMSA urban wage index for fiscal year 1982.

For fiscal year ended September 30, 1982, Cambridge Hospital submitted to its fiscal intermediary, Blue Cross of Minnesota, a cost report for operating costs incurred in providing in-patient hospital services to Medicare beneficiaries. The cost report was calculated under section 223 (P.L. 92–603) limitations based on the Urban Wage Index for the Minneapolis-St. Paul SMSA. Blue Cross audited the cost report and issued a notice of program reimbursement adjusting the section 223 limitation by application of a non-SMSA index. This adjustment limited reimbursement of allowable Medicare in-patient routine costs to the amount of the non-SMSA limitation. The fiscal intermediary's classification of Cambridge Hospital as a non-SMSA provider resulted in disallowed routine costs of $114,072. Complaint ¶ 5.

On January 31, 1984 Cambridge Hospital filed a notice of appeal and request for hearing with the Provider Reimbursement Review Board (PRRB), pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.-1835. A hearing was conducted before the PRRB on January 22, 1986. The PRRB by order dated April 1, 1986 denied Cambridge Hospital's request for reimbursement.

The hospital subsequently filed this action, seeking judicial review of the PRRB's decision. The Court has jurisdiction for judicial review of the final administrative decisions of plaintiff's provider reimbursement claims under subchapter XVIII of the Social Security Act as provided by section 1878(f) of the Act, 42 U.S.C. § 1395oo(f). This section provides for judicial review of

adverse decisions by the PRRB or of a subsequent review determination by the Secretary. *River Garden Hebrew Home For The Aged v. Califano,* 507 F.Supp. 221, 223 (M.D.Fla.1980).

## DISCUSSION

### I. Scope of Review

The Administrative Procedure Act, 5 U.S.C. § 706, prescribes in general the scope of judicial review of the Secretary's actions in administering the Medicare statute. 42 U.S.C. § 1395oo(f). Where an agency adjudication or agency rule-making is involved, the district court may overturn the Secretary's decision only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole. *City of Austin, Texas Brackenridge Hospital v. Heckler,* 753 F.2d 1307 (5th Cir.1985), *citing* 5 U.S.C. § 706. Moreover, because Congress charged the Secretary with the primary responsibility for interpreting the cost reimbursement provisions of the statute, the courts accord particular deference to his interpretation of the Medicare legislation. *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). The courts afford greater deference where the challenge relates to the Secretary's interpretation of his own regulations. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). However, the courts' deference does not extend to agencies' construction which conflicts with statutory directives. *Regents of University of California on behalf of University of California, Davis Medical Center v. Heckler,* 771 F.2d 1182, 1187 (9th Cir. 1985). The courts will not abdicate judicial responsibility by affirming administrative actions which are inconsistent with a statutory mandate or which frustrate the congressional policy underlying a statute. *Regents,* 771 F.2d at 1187. Thus, if the Secretary's regulations are found to deviate from Congressional will, either on their face or as applied, they must be invalidated as contrary to law. *Regents,* 771 F.2d at 1187.

Before the Provider Reimbursement Review Board, No. 84–354 (Jan. 22, 1986).

## II. The Medicare Act

### A. Statutory Framework

The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, created a comprehensive system of health care for the elderly and infirm. *Athens Community Hospital, Inc. v. Schweiker*, 686 F.2d 989, 991 (D.C.Cir. 1982), *modified*, 743 F.2d 1 (D.C.Cir.1984). Under the Act, certain institutions known as "providers" receive reimbursement for the "reasonable cost"[5] of services provided to qualified Medicare beneficiaries.[6] 42 U.S.C. §§ 1395x(v)(1)(A), 1395f(b), 1395x(u), 1395cc. Plaintiff is a "provider" as defined by the Act by virtue of having filed certain agreements with the defendant Secretary of Health and Human Services. 42 U.S.C. § 1395cc(a)(1), 1395x(u). Although the Secretary may directly reimburse a provider, 20 C.F.R. §§ 405.651(a), 405.654, the more common method of reimbursement is for the provider to appoint a "fiscal intermediary" which acts as the Secretary's agent for the purpose of reviewing claims and awarding reimbursement. 42 U.S.C. § 1395h. In the case at bar, Blue Cross and Blue Shield of Minnesota, a private insurance carrier, acts as the fiscal intermediary for the plaintiff.

The Medicare provider reimbursement scheme operates in the following manner. Pursuant to section 1395cc, a provider of services agrees not to charge the Medicare beneficiary directly, but instead agrees to receive payment from the government for services provided. These moneys come from the Federal Hospital Insurance Trust Fund, which is financed by special wage taxes. 42 U.S.C. § 1395i. Reimbursement may be made directly to the provider or, more commonly, to a "fiscal intermediary,"

as discussed above. Fiscal intermediaries are private, non-governmental entities, frequently health and accident insurance companies nominated by a provider or group of providers. They enter into contracts with the Secretary and serve as his agents for many functions, such as hospital audits, information dissemination, and fund disbursements. 42 U.S.C. § 1395h. Pursuant to 42 U.S.C. § 1395g, a provider receives interim pre-audit reimbursements not less than monthly based on billing submitted to the Secretary or his designate. At the close of the fiscal year, the provider submits a cost report and the Secretary then determines by audit the actual amount of reimbursement to which the provider is entitled for that fiscal year. 20 C.F.R. § 405.451(b)(1). Adjustments are thereafter made in the current interim payments in accordance with the amount determined to be due the provider as shown by the audit. The provider submits its bills for all services to the intermediary, who is responsible for their payment as agent for the Secretary. 42 U.S.C. § 1395f(b) (Supp. V. 1975) provides that the total amount to be paid to a provider shall be "the reasonable cost" of covered services provided to Medicare beneficiaries. 42 U.S.C. § 1395f(b)(1); 1395x(v)(1)(A). The statute defines "reasonable cost" as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." 42 U.S.C. § 1395x(v)(1)(A). Section 1395x(v) states that reasonable costs shall be determined in regulations issued by the Secretary establishing the methods of cost calculations. Section 1395x(v)(1)(A)(i) further provides that the calculations must take into account direct and indirect costs of providers so that the

---

5. Providers are entitled to recover the "reasonable cost" of covered services or the provider's "customary charge" for in-patient hospital service. 42 U.S.C. §§ 1395f(b), 1395x(u), 1395cc, *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, at 1073 (D.C.Cir.1978).

6. Providers are reimbursed by their fiscal intermediaries on an interim basis throughout the fiscal year based upon estimates of the costs of various services and projections of the number of medicare patient days. 42 U.S.C. § 1395g,

1395x(v)(1)(A)(ii); 20 C.F.R. §§ 405.402(b)(1), 405.402(b)(2), 405.454. This is done to avoid provider cash flow problems which might otherwise arise. After the close of the fiscal year, and after auditing the cost report submitted by the provider, the fiscal intermediary issues its "notice of program reimbursement" which entitles the provider to the difference between its interim payments and what the provider determines to be its total reimbursable costs.

costs for individuals covered by Medicare will not be borne by individuals not covered, and so that costs with respect to individuals not covered will not be borne by the insurance program. The Secretary is empowered to employ various methods in computing a provider's reasonable costs in accordance with the statutory definition. One such method, authorized by a 1972 amendment to the statute, involves the use of a schedule of limits that sets forth the amount of costs to be recognized as "reasonable." (These limits are referred to as the "cost limits" or "section 223 limits.") The statute further directs the Secretary to provide for "suitable retroactive corrective adjustments" where the amount of reimbursement produced by the chosen methods of determining costs "proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A).

Pursuant to his statutory authorization, the Secretary has from time to time promulgated regulations setting forth procedures for determining the amount of provider costs to be recognized as "reasonable" and thus reimbursable under the Medicare program. The regulation here in issue, 42 C.F.R. § 405.460, provides that a schedule of limits (cost limits), based on general cost estimates, would be promulgated and that reimbursements would be limited to the amount set forth in those schedules.[7] The regulation provides for exceptions, exemptions, and adjustments from such pre-established limits only in certain narrowly defined circumstances. 42 C.F.R. § 405.460(f).[8] *See generally Regents*, 771 F.2d at 1185; *Summit Nursing Home, Inc. v. United States*, 572 F.2d 737, 739, 211 Ct.Cl. 581 (1978).

## B. Plaintiff's Claim for Reimbursement

In this action, plaintiff claims that the PRRB's decision violated the express mandate of the Medicare Act that all "reasonable costs" be reimbursed. At issue is approximately $114,072 in expenses for which Cambridge Hospital claims it was unjustifiably denied reimbursement. Plaintiff argues that the PRRB's denial of its request for reclassification and reimbursement for the fiscal year ended September 30, 1982 was arbitrary and capricious, and further argues that the Secretary's failure to adopt regulations which allow suitable retroactive corrective adjustments when reimbursement proves inadequate constitutes an abuse of discretion, is not in accordance with the law, and is otherwise arbitrary and capricious. Complaint ¶ 9–10. Plaintiff seeks judgment in its favor reversing defendant's denial of plaintiff's reclassification and reimbursement requests and for the allowance and reimbursement of medical, in-patient routine costs incurred by plaintiff in 1982. Complaint at 4.

The specific issue raised in this motion involves the Secretary's use of SMSAs as a criterion for limiting reimbursable costs. Specifically, Cambridge Hospital challenges the Secretary's use of SMSAs as the sole criterion for limiting the per diem reimbursement allowed to Cambridge Hospital for each Medicare patient. Generally, the per diem rate allowed for hospitals within an SMSA is higher than the rate allowed for hospitals outside an SMSA. A hospital which lies outside an SMSA is characterized as a "rural" hospital. Cambridge Hospital was categorized as a rural hospital for fiscal year 1982, and thus was reimbursed at the lower rural rate, notwithstanding

---

**7.** The regulations provide that the following factors may be used by the Secretary to determine the cost limits to be applied:
　(1) Type of services rendered;
　(2) *Geographical area where services are rendered, allowing for grouping of noncontiguous areas having similar demographic and economic characteristics;*
　(3) Size of institution;
　(4) Nature and mix of services rendered; or
　(5) Type and mix of patients treated.
42 C.F.R. § 405.460 (emphasis added).

**8.** In general, hospitals may obtain exemptions based on their status as a sole community hospital, new provider, risk-based HMO, or rural hospital with less than 50 beds. 42 C.F.R. § 405.460(e). The regulations provide for exceptions based upon atypical services, extraordinary circumstances, fluctuating population, medical and paramedical programs, intensive routine care, essential community services, status as a newly-established home health agency, unusual labor costs, and changes in case mix. 42 C.F.R. § 405.460(f).

that it met the criterion for designation as an SMSA hospital, as discussed above. Cambridge Hospital argues that the PRRB's failure to take into account its higher operating and wage costs was arbitrary and capricious, and further argues that the Secretary's failure to consider evidence beyond the SMSA criterion to determine reasonable costs was arbitrary and capricious and not in accordance with law. Cambridge Hospital argues that the Secretary has in effect created an *irrebuttable* reasonable cost and cost limitation presumption, in violation of 42 U.S.C. § 1395x(v)(1)(A), which requires the Secretary to "provide for ... retroactive corrective adjustments where ... the aggregate reimbursement produced by the methods of determining costs proves to be ... inadequate...." 42 U.S.C. § 1395x(v)(1)(A)(ii).

The issue raised in this case—whether the Secretary may rely on a specified criterion as establishing a "conclusive" presumption that a given cost is or is not reasonable, or whether the presumption established by the regulations is rebuttable—has been directly considered by two courts of appeals. In *Regents of University of California on behalf of University of California, Davis Medical Center v. Heckler*, 771 F.2d 1182 (9th Cir.1985), the United States Court of Appeals for the Ninth Circuit ruled that the regulations create a *rebuttable presumption* that a given cost is or is not reasonable, but that the Secretary is obliged to make necessary retroactive corrective adjustments whenever the provider offers proof that the methods set forth in the regulations fail to adequately reimburse the provider for its reasonably-incurred costs. In *City of Austin, Texas Brackenridge Hospital v. Heckler*, 753 F.2d 1307 (5th Cir.1985), the United States Court of Appeals for the Fifth Circuit ruled that the Secretary is not required to conduct a case-by-case review and may rely on the regulations as setting forth a *conclusive presumption* that a given cost is or is not reasonable. In this case, the plaintiff argues that *Regents* is the better-reasoned decision, while the Secretary urges the Court to follow *City of Austin*. This is a case of first impression in this district and circuit.

**1. Regents**

In *Regents* the plaintiff hospital sought reimbursement for certain "atypical" services which it provided and for which the Secretary had denied reimbursement. In denying reimbursement the Secretary relied on the regulations in determining that the costs claimed by the hospital were not reasonable. The district court, while upholding the Secretary's authority to establish cost limits which presumptively define "reasonable cost," further held that the Secretary is under a statutory duty to provide exceptions and exemptions to such limits that will ensure that reasonable costs actually incurred are reimbursed. The district court's conclusion was based on 42 U.S.C. § 1395x(v)(1)(A)(ii), which directs the Secretary to make "suitable retroactive corrective adjustments" whenever the amount of reimbursement determined by the chosen method of cost calculation proves to be "inadequate or excessive." *Id.*

On appeal, the Ninth Circuit ruled that the district court had ruled correctly, and that the Secretary had a statutory duty to make necessary corrective adjustments. The Ninth Circuit reasoned as follows:

(A) *The statute directs the Secretary to make corrective adjustments whenever necessary to ensure that all reasonable costs are reimbursed.* The underlying goal of the statute is to ensure that costs incurred in treatment of Medicare beneficiaries are not shifted to non-Medicare patients. Reasonable costs are defined as actual costs less costs incurred in connection with "unnecessary" health services. The statute authorizes the Secretary to employ various methods in determining reasonable costs (cost methods). However, where application of a given cost method fails to adequately reimburse all reasonable costs, the Secretary has a *statutory duty* to make retroactive corrective adjustments. *Regents*, 771 F.2d at 1188–89, *citing* 42 U.S.C. § 1395x(v)(1)(A); *Kingsbrook Jewish Medical Center v. Richardson*, 486

F.2d 663 (2d Cir.1973); *Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 954 (5th. Cir.1977).

(B) *The 1972 amendments did not alter the Secretary's obligation to reimburse all reasonable costs.* In 1972 Congress amended the statute to authorize the Secretary to promulgate regulations establishing cost limits on the amount of reimbursement that would be recognized as reasonable. These cost limits were to be utilized by the Secretary to establish a prospective payment scheme, based on estimates of necessary expenses incurred. While the 1972 amendments permit the Secretary to establish cost limits which create a presumption that certain costs are reasonable, the amendments do not alter the Secretary's statutory duty to make retroactive corrective adjustments where necessary. Rather, the amendments merely added another method of cost calculation, which remains subject to Congress' clear command that "corrective adjustments" are to be made whenever application of the cost methods proves to be "inadequate or excessive." The cost limits are presumptive, but not conclusive. As stated by the Court:

> Both the structure and organization of the statute as amended and the legislative history of the 1972 amendments lead us to conclude that those amendments did not modify or eliminate the Secretary's statutory obligation to reimburse providers for reasonable costs actually incurred. Nor did they modify or eliminate the Secretary's duty to make corrective adjustments when, notwithstanding her use of a permissible method of cost calculation, the result in a particular case would be inconsistent with that statutory mandate. Rather, the 1972 amendments

authorized the Secretary to develop a schedule of limits that was to be applied on a presumptive basis, a schedule that was to be subject to the over-riding requirement that "corrective adjustments" be made whenever the actual reasonable costs exceed the established limits.

*Regents,* 771 F.2d at 1190–91.[9]

Because the Secretary had applied the cost limits established by the regulations in a conclusive and not a presumptive fashion, the Ninth Circuit upheld the district court's ruling remanding the case to the Secretary with directions to (1) review the claimed expenses to determine whether they were in fact reasonable, and (2) make such corrective adjustments as may be necessary. *Regents,* 711 F.2d at 1192.

A number of courts which have considered the question have reached a conclusion similar to that reached in *Regents.* In *Whitecliff, Inc. v. United States,* 536 F.2d 347, 210 Ct.Cl. 53 (1976), the provider sought to recover for alleged underpayment of reasonably incurred expenses. The Secretary argued that it had made payments in accordance with established cost methods. The provider argued that application of the cost methods led to inadequate reimbursement in its case and that it was entitled to corrective adjustment. The Court of Claims held that the Secretary was required to make a corrective adjustment whenever a particular cost method produces an inaccurate reimbursement, and that a regulation which permitted the Secretary to establish cost methods is "no substitute for the statutory requirement of 'suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reim-

---

**9.** The court explained the purpose of the 1972 amendment in the following terms:

> Prior to the 1972 amendments, reimbursements were calculated individually for each provider on a retrospective basis. That method generally led to reimbursement for all costs which providers had incurred, whether necessary and efficient or not, because it was extremely difficult for the Secretary to establish that a specific cost was unreasonable. The use of prospective payments regulated by a schedule of limits shifted the burden of proving the reasonableness of costs exceeding

> the presumptive limit to the provider.... [T]he 1972 amendments were designed to encourage providers to hold down rapidly escalating health care costs. This was accomplished, in part, by putting providers on notice that all costs in excess of the limit established by the Secretary would be considered presumptively unreasonable. Thus ... Congress' actual objectives in adopting the 1972 amendments are wholly compatible with the use of presumptive limits.

> *Regents,* 771 F.2d at 1190.

bursement produced by the methods of determining costs proves to be either inadequate or excessive.'" *Whitecliff,* 536 F.2d at 352. The court ruled:

> The answer, we think is that the statute's retroactivity provision—quoted above—does not permit the Secretary to disregard the significant fact that his two approved methods of cost-determination can lead to inadequate reimbursement in certain circumstances and in particular cases.... Because the Committee made no findings on Whitecliff's actual costs for 1967–1970, no comparison of those costs with its reimbursements for those years, and no evaluation of the accuracy of the method under which the provider was paid, we must remand to the Secretary for a hearing at which Whitecliff will be given an opportunity to prove its actual costs and the inadequacy of its reimbursement.

*Whitecliff,* 536 F.2d at 351–52 (footnote omitted).

In *Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir.1977), a medical provider sought reimbursement for certain expenses disallowed by the Secretary. In ruling for the provider, the Court declared:

> Upon determining that one of his cost reimbursement regulations produces inadequate or excessive payments to providers, the Secretary has a statutory duty to make suitable retroactive corrective adjustments. *Id.* § 1395x(v)(1)(A)(ii); *Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger,* 543 F.2d 703, 708 (9th Cir.1976); *Whitecliff, Inc. v. United States,* 536 F.2d 347, 351–52 [210 Ct.Cl. 53] (Ct.Cl.1976); *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 669–70 (2d Cir.1973).

*Springdale,* 545 F.2d at 954.

In *Medical Center Hospital v. Bowen,* Medicare and Medicaid Guide (CCH) ¶ 35,-370 (M.D.Fla.1986), a case decided by the United States District Court for the Middle District of Florida on July 28, 1986, the Secretary disallowed certain expenses claimed by the provider, on the ground that the provider was a "rural" hospital and thus not entitled to the higher SMSA reim-

bursement rates which it claimed. The provider argued that because it was located between two SMSAs, and because it competed with hospitals in the SMSAs for employees, it was entitled to the higher SMSA rate. The Secretary argued that it was not required to determine reasonable costs on a case-by-case basis. After discussing *Regents* and *City of Austin,* the court determined to follow *Regents* and accordingly held:

> [A]pplication of the Secretary's cost limits and reasonable cost regulations in a manner that creates *irrebuttable presumptions* which foreclose a provider's opportunity to present evidence of reasonable costs actually incurred, and any portion of the Secretary's regulations that require such inflexible and conclusive application of the Secretary's standards, *is inconsistent with 42 U.S.C. § 1395x(v)(1)(A)* as it applies to those claims for reimbursement of reasonable costs incurred in 1982. This case is therefore REMANDED to the Secretary of Health and Human Services for review of MCH's claimed expenses for the 1982 year to determine if they were reasonably incurred, as opposed to unnecessary, in the efficient delivery of needed health services, utilizing the standard criteria developed by the Secretary *as well as other relevant evidence* of reasonable costs presented by MCH. *If the Secretary finds that MCH actually incurred reasonable costs greater than that predicted by the Secretary's criteria, the Secretary shall make suitable retroactive reimbursement.*

*Medical Center Hospital,* Medicare and Medicaid Guide at 11,948–11,949.

### 2. City of Austin

In *City of Austin,* the provider claimed that application of the Secretary's cost limits resulted in inadequate reimbursement, and accordingly sought judicial review. Specifically, the provider claimed that a cost limit based on per capita income in the area serviced by the hospital was inequitable as applied to it, in that it was located in a community which, because of its sizeable student population, reflected a misleadingly low per capita income. The Secretary declined to adjust the per capita

income figure, on the basis that the cost limits were conclusive and the Secretary was not required to make case-by-case adjustments.

The district court ruled in favor of the Secretary and on appeal the Fifth Circuit affirmed. The court began by noting that the agency is entitled to great deference in construction of its own regulations. The court then ruled that the cost limits established by the Secretary bore a "reasonable relation" to legislative purpose. *City of Austin,* 753 F.2d at 1315. Because the provider's claims did not fall within the exceptions established by the regulations— the exception for "atypical services" or the exception for "extraordinary circumstances"—the court found that the provider was not entitled to "corrective adjustment." In conclusion, the court declared:

> We sympathize with the plight of Brackenridge and similar institutions. Our decision may appear harsh in the context of one hospital, but regulation cannot be accomplished on a hospital-by-hospital basis. The Secretary must make generalizations in achieving overall regulatory goals. It will always fall to some hospital to miss narrowly the more favorable classification or other category under the objective factors that the regulation employs. In this instance it was Brackenridge.

*City of Austin,* 753 F.2d at 1317–18.

### 3. The Road Not Taken

On balance, the Court finds that *Regents* is the more persuasive authority. Quite clearly, the Secretary is entitled to establish presumptive cost limits. This was the express purpose of the 1972 amendments. The issue here is whether the Secretary is entitled to rely on the cost limits as establishing a *conclusive* presumption. If so, the Secretary's designation of Cambridge

Hospital as a rural hospital is dispositive. In *Regents* the Ninth Circuit held that to construe the cost limits as "conclusive" would be to eviscerate section 1395x(v)(1)(A). That section mandates that the Secretary make "suitable corrective adjustments" where the amount of reimbursement produced by application of the costs limits proves to be "inadequate." If the cost limits are conclusive, then section 1395x(v)(1)(A) is robbed of all meaning. Nothing in the 1972 amendments indicates that Congress intended to eviscerate section 1395x(v)(1)(A). In fact, Congress' failure to amend section 1395x(v)(1)(A) when it amended the Act in 1972 leads to a contrary conclusion. Congress knew of this section in 1972 yet failed to amend it, accordingly, it is reasonable to presume that Congress intended for that section to retain its vitality.[10]

The inherent inequity of the Secretary's position is amply demonstrated in the case at bar. It is undisputed that Cambridge Hospital met all the criteria for an SMSA provider in 1982. Because it competes with hospitals in the Twin Cities for labor and materials, Cambridge Hospital incurs higher SMSA costs. This was as true in 1982 as it was in 1983 when Cambridge Hospital was officially designated as an SMSA provider. Nonetheless, the Secretary refuses to look beyond its own rigidly-defined cost limits and to assess the "reasonableness" of Cambridge Hospital's costs based upon Cambridge Hospital's unique situation. Significantly, the Secretary does not claim that the expenses claimed by Cambridge Hospital are somehow frivolous or excessive. This rigid reliance on regulatory cost limits is inequitable and contrary to the clear import of section 1395x(v)(1)(A).

It seems clear that the Secretary's primary interest lies in administrative efficien-

---

**10.** The Secretary argues that plaintiff is not prejudiced by conclusive application of the regulations, in that plaintiff was free to avail itself of the exception for atypical labor costs. 42 C.F.R. § 460(f). In particular, the Secretary argues that the regulations provide for an adjustment for providers that have experienced labor costs that vary more than ten percent from the promulgated limits. 42 C.F.R. § 405.460(f)(8). As plaintiff points out, however, it simply is unable to avail itself of the benefits of the section

405.460(f)(8) exception in the unique circumstances of this case. Higher labor costs are but one aspect of the escalated cost structure faced by plaintiff. The Secretary argues that the cost limits established by the regulations are not "conclusive" in that providers may justify additional reimbursement through the exceptions process. Quite obviously, as to a provider unable to avail itself of any of the narrowly-tailored exceptions, the cost limits are conclusive.

cy. This is an important concern. If the Secretary is required to make case-by-case assessments of providers' claims, the cost of administering the Medicare program will be escalated. Moneys expended in administration of the program cannot be used for direct aid of the elderly and infirm. These considerations notwithstanding, it is unjust to shift the cost of Medicare to the provider, particularly where the provider's claimed expenses are eminently reasonable. The Secretary has a statutory duty to determine whether the cost limits have produced an inequitable result in a given case. The Secretary may not use regulatory cost limits as a shield to circumvent this statutory duty.

Accordingly, based on the foregoing, and upon review of all files, records and proceedings herein,

IT IS ORDERED that:

1. plaintiff's motion for summary judgment is granted;

2. the case is remanded to the Secretary and the Secretary is directed to review the expenses claimed by plaintiff in accordance with this opinion to determine whether they were, in fact, reasonable, and to make such retroactive corrective adjustments as may be necessary.